T.C. Memo. 1996-254


UNITED STATES TAX COURT


ORVILLE E. CHRISTENSEN AND HELEN V. CHRISTENSEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12706-94.                          Filed June 3, 1996.


<u>Louis S. Weller</u>, for petitioners.

<u>Cynthia K. Hustad</u>, for respondent.


MEMORANDUM OPINION

KÖRNER, <u>Judge</u>:  By timely notice of deficiency, respondent
determined deficiencies in petitioners' Federal income tax in the
amounts of $220,039 for 1988 and $240 for 1989.  The case was
submitted to the Court on a set of fully stipulated facts and
exhibits under Rule 122.  Except as hereinafter noted, all
statutory references are to the Internal Revenue Code in effect

for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After the settlement of other issues in the case, it remains for the Court to decide:

(1) Whether the transfer of a certain property by petitioner husband in 1988, followed by the receipt by him of certain other properties in 1989, constituted a tax-free exchange of like-kind properties within the meaning of section 1031 for the year 1988; and

(2) whether, if such transfer and receipt of properties does not qualify for tax-free exchange treatment under section 1031, but is rather a sale and exchange of properties on which gain or loss is to be recognized, such transactions constitute sales that are reportable on the installment method under section 453.

Petitioners, husband and wife, filed joint income tax returns for the years 1988 and 1989, and at the time of filing their petition herein were residents of California.

In 1981, petitioner husband purchased a business property located in Santa Rosa, California (Tesconi property), which was operated as a trade or business property producing rental income, and on which petitioners reported income and losses in their joint income tax returns. On December 22, 1988, petitioner husband entered into an "agreement of exchange of real property" with Bill and Linda Wilson, Robert and Nina Klotz, and Gary and Kendra Falconer, under which petitioner husband as "exchanger"

agreed to transfer to Mr. and Mrs. Wilson as "facilitators", for further transfer to Mr. and Mrs. Klotz and Mr. and Mrs. Falconer as "purchasers", the Tesconi property, as part of a contemplated tax-free exchange under the provisions of section 1031. In addition, the exchanger agreed to notify the facilitators of the property that the exchanger desired to acquire within 45 days after the closing date of the transfer to facilitators of the Tesconi property in order to complete the projected exchange. Further, the agreement specified that such property to be received by petitioner husband as exchanger in the projected exchange would be acquired by him "no later than 180 days after the closing date (but not later than the due date (taking into account extensions) of Exchanger's Federal income tax returns for the taxable year in which Exchanger's property was transferred to Facilitator)".

On the same date mentioned above, December 22, 1988, petitioner husband transferred the Tesconi property to the facilitators, and on that same date the facilitators transferred said property to the purchasers. No consideration for the transfer was received at that time.

On February 3, 1989, petitioner husband sent the facilitators a letter listing the properties that he desired to acquire as part of the projected exchange. Nineteen such properties were listed, and were identified by the Sonoma County (California) county assessor's parcel numbers, except for one

listed property, which was located in Plumas County.  The first five of these properties were listed in order of preference by petitioner husband as exchanger.

Thereafter, some of the desired exchange properties listed in the designation letter were acquired as follows (all such properties were listed in the exchanger's notification letter to the facilitators, and are referred to herein by their commonly accepted place names).

1.  On April 25, 1989, Applesauce Alley was transferred by Golden Oak Enterprises, Inc., to the facilitators, who on the same day transferred the property to petitioner husband, who simultaneously transferred title to petitioners as trustees of the Christensen trust, a revocable trust created by petitioners for their benefit, to which they were trustees.

2.  On May 1, 1989, the property known as 6691 Sebastopol was acquired by the facilitators from Don and Betty Mallory, was transferred by them to petitioner husband, and was simultaneously transferred by him to petitioners as trustees for the Christensen trust.

3.  On June 12, 1989, Thomas and Jean Scally transferred the property known as Shiloh Road to the facilitators, who transferred the property to petitioner husband on the same day.

4.  On June 20, 1989, David Landrus and William Frye transferred the property known as Boyd Street to the facilitators, and on the same day the facilitators transferred

the property to petitioner husband, who in turn transferred the same to petitioners as trustees for the Christensen trust.

5. On June 16, 1989, the facilitators transferred the property known as Haystack Landing to petitioner husband, who in turn transferred the property to petitioners as trustees for the Christensen trust.

6. On April 26, 1989, Jeffrey and Sandra Bohn transferred the property known as the Greenville property to petitioners as trustees for the Christensen trust.

With respect to all these transfers of property, except as section 1031(a)(3) may apply, petitioners received no money or other nonqualifying property from the facilitators or otherwise as the result of transferring the Tesconi property.

As part of their 1988 joint income tax return, petitioners included the statement "the property known as 360 Tesconi Circle is being exchanged in a deferred 'starker' exchange. The transaction will be completed and reported in 1979". The use of "1979" in this statement is a typographical error that should read "1989".

No issue is raised by the parties, and they apparently agree that the Tesconi property relinquished by petitioner husband and the properties received by him were like-kind properties which would qualify for exchange under section 1031(a)(1). Likewise, the parties apparently agree that there was no cash boot or other nonqualifying property received in this set of transactions under

section 1031(b). Accordingly, the controversy is narrowly framed: was the series of transactions involved herein a qualifying nontaxable exchange within the limitations of section 1031(a)(3); and, if not, does the integrated transaction qualify for income tax purposes as an installment sale, to be reported under the provisions of section 453?

Somewhat prophetically, this Court said in Barker v. Commissioner, 74 T.C. 555, 560-561 (1980):

> This case involves another variant of the multiple-party, like-kind exchange by which the taxpayer, as in this case, seeks to terminate one real estate investment and acquire another real estate investment without recognizing gain. The statutory provision for nonrecognition treatment is section 1031. The touchstone of section 1031, at least in this context, is the requirement that there be an exchange of like-kind business or investment properties, as distinguished from a cash sale of property by the taxpayer and a reinvestment of the proceeds in other property.
>
> The "exchange" requirement poses an analytical problem because it runs headlong into the familiar tax law maxim that the substance of a transaction controls over form. In a sense, the substance of a transaction in which the taxpayer sells property and immediately reinvests the proceeds in like-kind property is not much different from the substance of a transaction in which two parcels are exchanged without cash. Yet, if the exchange requirement is to have any significance at all, the perhaps formalistic difference between the two types of transactions must, at least on occasion, engender different results.
>
> The line between an exchange on the one hand and a nonqualifying sale and reinvestment on the other becomes even less distinct when the person who owns the property sought by the taxpayer is not the same person who wants to acquire the taxpayer's property. This means that multiple parties must be involved in the transaction. * * * [Fn. ref. and citations omitted.]

In Starker v. United States, 602 F.2d 1341 (9th Cir. 1979), the Court of Appeals pointed out that at the time of an agreement of exchange, the possibility of a cash sale does not preclude the application of section 1031 if the parties truly intended to have an exchange of like-kind properties, and if such an exchange is timely consummated; the transfer of one property and the receipt of another need not be simultaneous. See Brauer v. Commissioner, 74 T.C. 1134 (1980).

Shortly thereafter, in Biggs v. Commissioner, 632 F.2d 1171 (5th Cir. 1980), affg. 69 T.C. 905 (1978), the Court of Appeals pointed out that the other party of a proposed nontaxable exchange need not hold title to the property to be exchanged at the time of the agreement in order to qualify the transaction as an exchange under section 1031. Multiple transactions leading up to the alleged exchange are not necessarily to be considered as separate sales and purchases. There must, however, be a true exchange of properties even though with some taxable boot, not just a sale and a subsequent purchase. The whole transaction must be shown to be part of an overall plan, which is carried out.

Concurring with Biggs v. Commissioner, supra, this Court in Garcia v. Commissioner, 80 T.C. 491 (1983), opined that the step transaction doctrine is to be included within the reach of section 1031; the total plan involving a true exchange must be considered. Nevertheless, the taxpayer's expressed intentions to

have a transaction qualify as a section 1031 exchange do not matter; what counts is what was actually done. Carlton v. United States, 385 F.2d 238 (5th Cir. 1967).

Possibly with the purpose of clarifying some confusion with respect to the limits of section 1031, and the time that might be allowable in order to complete such a transaction, which would qualify as tax free, Congress amended, in the Deficit Reduction Act of 1984, Pub. L. 98-369 (DEFRA), sec. 77(a), 98 Stat. 494, 595, the provisions of section 1031 by adding a new paragraph (3) to section 1031(a). The new subsection reads as follows:

(3) Requirement that property be identified and that exchange be completed not more than 180 days after transfer of exchanged property.--For purposes of this subsection, any property received by the taxpayer shall be treated as property which is not like-kind property if--

(A) such property is not identified as property to be received in the exchange on or before the day which is 45 days after the date on which the taxpayer transfers the property relinquished in the exchange, or

(B) such property is received after the earlier of--

(i) the day which is 180 days after the date on which the taxpayer transfers the property relinquished in the exchange, or

(ii) the due date (determined with regard to extension) for the transferor's return of the tax imposed by this chapter for the taxable year in which the transfer of the relinquished property occurs.

DEFRA section 77(b)(3), 98 Stat. 596, made the new section 1031(a)(3) effective for transfers made after July 18, 1984, in tax years ending after that date.

Qualification Under Section 1031(a)(3)(A)

First, we consider whether the projected exchange of properties qualifies under the restrictions of section 1031(a)(3)(A)--that the desired properties to be received in the exchange be specifically designated by the exchanger within 45 days. We reject the suggestion that section 1031(a)(3)(A) was not satisfied in this case because an excessive number of properties were designated. The statute, which we have quoted above, only requires that the designated replacement properties be specified within 45 days after the date on which the taxpayer transfers the property relinquished in the exchange. In the instant case, that means 45 days after petitioner husband transferred the Tesconi property to the facilitators, which was December 22, 1988. Forty-five days thereafter was February 5, 1989, and prior to that date, petitioner husband had designated all the desired replacement properties. At that time, there was no further limitation on the application of section 1031(a)(3)(A). In an attempt to limit the number of properties that could be so designated, section 1.1031(k)-(1)(c), Income Tax Regs., was adopted by T.D. 8346, 1991-1 C.B. 150, 157. The regulations, however, are prospective only as they apply to transfers of property made on or after June 10, 1991. At the

time of the instant transaction, therefore, there were no regulations in effect, nor were there any corresponding regulations to limit the number of properties that could be designated.  In the instant case, the letter of designation specified 19 properties, of which 5 were stated to be preferred by petitioner husband as exchanger and 6 were ultimately received.  We do not find anything excessive or improper in such designation under the law or under the regulations as they stood at that time.  See St. Laurent v. Commissioner, T.C. Memo. 1996-150.

Qualification Under Section 1031(a)(3)(B)

The second requirement of section 1031(a)(3), in subparagraph (B), is that the property to be received by the taxpayer in exchange will not qualify for tax-free treatment under section 1031 if it was received after 180 days from the date when the taxpayer transfers the property relinquished in the exchange, or, alternatively, if such property is received after "the due date (determined with regard to extension) for the transferor's return of the tax imposed by this chapter for the taxable year in which the transfer of the relinquished property occurs".

There are no regulations concerning these provisions of section 1031(a)(3)(B), either at the time of enactment of this subparagraph or since.  We are accordingly left to interpret the plain language of the statute, which we find to be unambiguous.

Section 6072 provides that a return for an individual on the calendar year basis must be filed by April 15 following the close of the calendar year. Section 7503 then provides that if April 15 falls on a Saturday, Sunday, or legal holiday, the due date will be the next day not a Saturday, Sunday, or legal holiday. The due date for petitioners' 1988 return was on April 15, 1989, except that such date was a Saturday. Therefore, under section 7503, the due date for petitioners' income tax return was April 17, 1989. As we have detailed above, all the transfers to petitioner husband, the exchanger, in this transaction happened after April 17, 1989: the earliest on April 25, 1989, and the latest on June 20, 1989. Such transfer dates fall outside the exchange period provided for by the statute, section 1031(a)(3)(B)(ii).

Petitioners nevertheless urge that respondent's argument is just a quibble, that even though petitioners' joint return was due on April 17, 1989, and in fact was filed on that date, petitioners nevertheless were entitled to an automatic 4-month extension of time for the year 1988, which would extend the due date for the return from April 17, 1989, to August 17, 1989, and that since they were automatically entitled to such an extension, the permissible period within which a tax-free exchange could be made should be extended by that period.

We must reject petitioners' argument. The fact is that petitioners' joint return was filed on April 17, 1989, its due

date. The further fact is that no extension of time to file such return was applied for by petitioners. Furthermore, the "automatic" granting of such extension of the period for time to file is not as automatic as petitioners urge. Section 6081(a) gives the Secretary power to grant extensions of time for filing returns, generally for not more than 6 months. Pursuant to that statutory provision, section 1.6081-4, Income Tax Regs., effective in the years before us, provides an "automatic" extension of time to file of 4 months, but such extension is to be considered granted only if certain conditions are met:

(a) An application of extension on Form 4868 must be made and executed by the taxpayer or other authorized person;

(b) such application must be filed with the appropriate revenue officer on or before the normal due date of the return (in this case, April 17, 1989);

(c) such application must show the full estimated amount of the tax to be due with the return, and the remittance of such estimated amount with the application is required; and

(d) the automatic extension of time is granted only if the above conditions are met.

In the instant case, the return for 1988 that petitioners filed showed an overpayment of tax and a refund due. However, none of the other above-mentioned conditions were met by petitioners and, in fact, no application for extension for 1988 was filed.

Accordingly, we must hold that the requirements of section 1031(a)(3)(B) are unambiguous; the transfer of the replacement properties to petitioner husband as exchanger took place after the required receiving period; no extension of time for filing the required return for 1988 was applied for or granted; and the transfers involved in this case do not qualify for tax-free treatment under section 1031.

## Qualification of the Transaction for Reporting on the Installment Basis

We have held that the alleged "exchange" of the Tesconi property by petitioner husband in exchange for various designated properties, all acquired in 1989, are not to be treated as a tax-free exchange under section 1031; rather, it is a sale by petitioner husband, in payment of which he received the properties that we have listed herein. The parties have stipulated that the gain on the disposition of the Tesconi property was $776,441 after deducting basis, refinancing costs, and expenses of sale. It is true, however, that although the Tesconi property was conveyed to the facilitators and to the purchasers on December 22, 1988, the compensation to petitioner husband was not received until after April 17, 1989. Petitioners argue that, if the Court should hold that the transaction herein does not qualify for tax-free exchange treatment under section 1031, nevertheless it should qualify for installment sale

treatment under section 453.[1]  Section 453(a) provides that except as otherwise provided, income from an installment sale shall be taken into account for purposes of taxation under the installment method.  An installment sale is defined in section 453(b) as a "disposition of property where at least 1 payment is to be received after the close of the taxable year in which the disposition occurs".  Section 453(c) defines the installment method of reporting as "a method under which the income recognized for any taxable year from a disposition is that proportion of the payments received in that year which the gross profit (realized or to be realized when payment is completed) bears to the total contract price".  If the facts fulfil the requirements of an installment sale, this method of tax reporting is to be followed unless the taxpayer elects to have the section not apply to such a disposition.  Sec. 453(d).

In the instant case, the property was conveyed by petitioner husband to the facilitators and by them to the purchasers on December 22, 1988.  Nevertheless, no payment for the conveyance, in the form of the properties detailed above, was received until

---

[1]  This issue was not raised by petitioners in their petition herein, nor by respondent in answer.  However, it was argued by petitioners on brief, and respondent responded to it and accepted it on brief.  Normally we shall not consider an issue that was not pleaded, but raised for the first time on brief.  Rule 34(b)(4).  However, since respondent has replied to the argument and has accepted petitioners' position thereon, the issue will be deemed raised and tried by consent of the parties under Rule 41(b).

various dates in the year 1989.  Accordingly, we agree with petitioner and respondent and hold that although the Tesconi property was conveyed by petitioner husband to the purchasers in 1988, no payment therefor was received until 1989, so that an installment sale took place under section 453(b).  Since respondent did not determine that any taxable sale took place in the year 1989, nor any deficiency of tax resulting therefrom, we need to make no further determinations regarding this matter, but simply hold that respondent's determination of additional income for 1988 on account of the Tesconi transfer was in error.

<u>Decision will be entered</u>

<u>under Rule 155</u>.